## GONZÁLEZ *v.* MÉNDEZ ET AL.

### APELACIÓN procedente de la Corte de Distrito de

### Humacao.

No. 101. Resuelto en Marzo 31, 1905.

SOCIEDAD.—DERECHOS DE LOS SOCIOS SOBRE LOS BIENES DE LA SOCIEDAD.—El hecho de que una sociedad sea dueña de determinados bienes inmuebles, no es razón legal para que un socio pueda reputarse condueño de esos mismos bienes, por más que tenga un interés en la sociedad, y pueda trasmitirlo á otra persona, con el consentimiento de los demás socios.

ID.—Si de acuerdo con la doctrina precedente, el socio no es condueño ó partícipe de los bienes de cualquier clase que pertenezcan á la sociedad, es obvio que al ocurrir su fallecimiento no puede trasmitir á sus herederos condominio alguno en tales bienes.

ID.—ENAGENACIÓN DE BIENES DE MENORES.—CESIÓN DE DERECHOS Y ACCIONES.—En este caso siendo la demandante menor de edad, su madre, como representante legal de aquélla, cedió y trasmitió á una sociedad, el *condominio, participación y cuantos derechos y acciones* pertenecieran en los bienes de la sociedad, á su hija menor, como heredera de uno de los socios, sin que se hubiera hecho préviamente una liquidación y división de los bienes de dicha sociedad, ni haberse determinado y fijado con exactitud el haber correspondiente á dicha heredera: *Se resolvió* que el contrato celebrado es de *enagenación de derechos y acciones,* que no pueden calificarse de derechos dominicales ó reales sobre determinados bienes inmuebles, y en su virtud, tal contrato no está comprendido dentro del precepto del art. 164 del Código Civil antíguo, siendo perfectamente válido y eficaz.

ID.—ACTOS MERCANTILES.—LIQUIDACIÓN DE LA SOCIEDAD.—Los artículos 50, 234

y 297 del Código de Comercio no son aplicables al contrato á que se refiere el párrafo anterior, pues dicho contrato no es un *acto mercantil*, y tiene por sí mismo una entidad propia é independiente de la liquidación de la sociedad, la que consiste en cobrar los créditos, pagar las deudas y realizar las operaciones pendientes.

ID.—BIENES MUEBLES É INMUEBLES.—Las disposiciones del art. 2010 de la antígua Ley de Enjuiciamiento Civil quedaron circunscritas, por lo que respecta al padre y á la madre de los menores, por el art. 164 del antíguo Código Civil, á los bienes inmuebles, entre los que están comprendidos los derechos reales de cualquier clase que puedan afectarlos, y excluídos todos los demás bienes á que dicho art. 2010 se refiere.

ID.—INTERPRETACIÓN DE LEYES.—DISPOSICIONES DE CARÁCTER PROHIBITORIO.—Las disposiciones de carácter prohibitorio, como la comprendida en el art. 164 del antíguo Código Civil, no pueden interpretarse en sentido *extensivo*, sino restrictivamente, en armonía con las reglas de hermenéutica legal: "*favorabilia sunt amplianda et odiosa restringenda; é inclusio unius est exclusio alterius.*"

ID.—Las disposiciones de los artículos 2010 de la antígua Ley de Enjuiciamiento Civil y 164 del antíguo Código Civil, son contradictorias é incompatibles, y en su virtud las disposiciones del primero han de estimarse derogadas por las del último, que fué aprobado posteriormente.

ID.—EFECTOS DE LA PATRIA POTESTAD RESPECTO DE LOS BIENES DE LOS HIJOS.—Para determinar los efectos de la patria potestad respecto de los bienes de los hijos, el padre y la madre deben atenerse á las disposiciones del Código Civil y no á las de la antígua Ley de Enjuiciamiento Civil.

Los hechos están expresados en la Opinión.

Abogado de los apelantes: *Sr. Hernández López.*

Abogado del apelado: *Sr. Tirado.*

EL JUEZ ASOCIADO SR. HERNÁNDEZ emitió la opinión del Tribunal.

Por escritura pública número 177 otorgada en el pueblo de Yabucoa con fecha veinte y uno de Septiembre de mil ochocientos noventa y uno, ante el Notario Don Marcelino Estevanez Nanclares, constituyeron una sociedad regular colectiva mercantil, con domicilio en dicho pueblo, Don Domingo González y González, Don Jacinto Gomez Sierra, Don Manuel Mendez Rodriguez y Don Juan Antonio Ramón y Don Manuel Mendez Argodilla y Rodriguez, representados los dos últimos por Don José Rodriguez de las Albas, y á esa sociedad, que había de dedicarse á la compra y venta por mayor y al detall de mercancías, provisiones, frutos del país y cualquier otro género de lícito comercio, y giraría bajo la razón de González Mendez y Ca., siendo socios gestores de ella los tres primeros, aportaron Don Domingo González cuarenta y ocho

mil seiscientos veinte pesos ochenta y siete centavos, Don Jacinto Gomez ocho mil seiscientos cuatro pesos veinte y seis centavos, D. Manuel Mendez ochocientos cuarenta y un pesos cuarenta y seis centavos, y Don Juan Antonio Ramón y Don Manuel Mendez Argodilla cuarenta y nueve mil ochocientos sesenta pesos ochenta y cinco centavos, cuyas partidas daban un total de ciento siete mil novecientos veinte y siete pesos cuarenta y cuatro centavos de la moneda entonces corriente, consistente en las mercaderías, bienes y existencias que les pertenecían en la sociedad que con igual razón mercantil había venido girando en aquel pueblo, de cuya liquidación se hacía cargo la nueva sociedad, habiéndose establecido, entre otros pactos, que la nueva sociedad se constituía por el plazo de dos años á contar desde el día primero de Setiembre citado para vencer en treinta y uno de Agosto de mil ochocientos noventa y tres, y que, si durante ese plazo ocurría el fallecimiento de alguno de los socios, la sociedad continuaría hasta la terminación de aquél con los herederos del socio ó socios que fallecieran, adquiriendo esos herederos iguales derechos que sus causantes con excepción de lo concerniente á la gestión y administración de la misma. Por escritura pública No. 186 de nueve de Agosto de mil ochocientos noventa y tres fué prorrogada por un año más la sociedad González Mendez y Ca., con los mismos pactos y estipulaciones de su constitución; y mediante otra escritura pública No. 185 de veinte y cinco de Agosto de mil ochocientos noventa y cuatro volvió á prorrogarse en igual forma y con las demás estipulaciones que en ella se expresan, por otro año más vencible el treinta y uno de Agosto del noventa y cinco, conviniendo los interesados en que si durante el último mes de dicho plazo alguno de los socios no manifestaba su voluntad de separarse de la sociedad, se consideraría desde luego prorrogada la duración de ella, sin necesidad de nueva escritura, por otro año más vencible el treinta y uno de Agosto de mil

ochocientos noventa y seis; mediante cuya última escritura fué también modificada la repetida sociedad por haber entrado á formar parte de ella Don Manuel García Fernández en concepto de socio industrial. Falleció Don Domingo González en veinte y seis de Marzo de mil ochocientos noventa y cinco bajo testamento cerrado que otorgó el día once del propio mes y que por disposición judicial fué protocolizado en la Notaría de Humacao con fecha treinta del mismo Marzo, y en ese testamento el González reconoció como hija natural suya á Carmen Resto, nacida en el año de mil ochocientos ochenta y dos, declaró como bienes de su propiedad lo que al tiempo de su fallecimiento le correspondiera por todos conceptos en la mercantil González Méndez y Ca., de que era socio gestor, instituyó por únicas y universales herederas á su legítima madre Da. Vicenta González y á su mencionada hija natural reconocida, por partes iguales, y nombró por albaceas solidariamente á su socio Don Jacinto Gomez Sierra, á Don Andrés Antelo y Antelo y á Don Jaime Bagué Pujals. Con fecha 28 de Junio del expresado año 95 el albacea Don Jacinto Gómez Sierra y Da. Petrona Resto, madre de la menor Da. Carmen González Resto, procedieron de común acuerdo á practicar el inventario general y avalúo de los bienes que Don Domingo González dejara á su fallecimiento, y declararon en documento privado, firmado por ellos y por los testigos Gregorio Berríos y Juan Ayuso, que no habiendo terminado aún su duración la sociedad mercantil González Méndez y Ca., de que era socio gestor Don Domingo González, y no pudiendo por tanto determinarse con exactitud el haber ó capital que en la misma pudiera corresponder al Don Domingo en la fecha indicada, se calculaba prudencialmente y fijaba dicho capital en la suma de treinta y siete mil quinientos pesos á reserva de lo que resultara á la terminación y liquidación de la expresada sociedad, á cuya suma debía agregarse el importe de las veinte y cinco accio-

nes del Banco Territorial y Agrícola de Puerto Rico per-
tenecientes al Gonzalez, por las que había satisfecho mil
cuatrocientos cincuenta pesos, partida que en unión de
la anterior suman treinta y ocho mil novecientos cincuen-
ta pesos. Bajo el inventario y avalúo expresados, Don
Jacinto Gómez Sierra y Da. Petrona Resto, como ma-
dre de la menor Da. Carmen González Resto, procedie-
ron en la misma fecha veinte y ocho de Junio de mil ocho-
cientos noventa y cinco á liquidar provisionalmente el
caudal inventariado para efectuar el pago de los derechos
reales devengados por trasmisión de herencia, y á reser-
va de modificar la liquidación, si así procedía, en vista de
lo que resultara de la liquidación de la Sociedad González
Méndez y Ca., hicieron constar en documento privado
firmado por ambos que el caudal inventariado importaba
treinta y ocho mil novecientos cincuenta pesos, y debien-
do deducirse de él mis pesos, importe de un legado hecho
por González á favor de la menor Leonor Martínez, que-
daban por distribuir entre las herederas Doña Vicenta
González y Doña Carmen González Resto, treinta y siete
mil novecientos cincuenta pesos, correspondiendo á cada
una de ellas, según la voluntad del testador, diez y ocho
mil novecientos setenta y cinco pesos. En carta de fe-
cha dos de Febrero de mil ochocientos noventa y seis, di-
rigida por Don Andrés Antelo á Doña Petrona Resto, ma-
nifestó aquél á ésta que el capital social de Don Domingo
González en la mercantil González Méndez y Ca., el día 17
de Julio del año anterior, en que se pasó inventario, mon-
taba á sesenta y siete mil doscientos cincuenta y dos pesos
cuarenta y tres centavos. Así las cosas, con fecha diez y
nueve de Junio de mil ochocientos noventa y seis Don
Manuel Méndez Rodríguez, Don Jacinto Gómez Sierra,
Don Manuel García Fernández, Da. Petrona Resto y Ne-
grón y Don Manuel Lomba Peña, Gómez y García por
derecho propio, y Méndez por sí y como apoderado de su
madre Da. María Rodríguez López y hermanos Don Juan

y Da. María Méndez Rodríguez, de los cuales la Da. María obraba por derecho propio y en representación de sus menores hijos Don Ceferino, Don José y otro Don José Méndez Rodríguez, la Da. Petrona como representante legal de su menor hija constituída bajo su potestad Da. Carmen González Resto, y Lomba como apoderado de Da. Vicenta González Alonso, otorgaron en el pueblo de Yabucoa, ante el Notario Don Marcelino Estebanez Nanclares, *escritura de separación de un socio, con cesión de derechos y acciones y modificación de sociedad mercantil,* cuya escritura, contiene entre otras las cláusulas que se transcriben á continuación:

*Primera.*—Los comparecientes Da. Petrona Resto y Negrón y Don Manuel Lomba y Peña, la primera en nombre y en representación de su hija menor Carmen González y Resto constituida bajo su potestad, y cumpliendo la promesa de *venta hecha* mediante la escritura número ochenta y nueve otorgada á mi testimonio el veinte de Mayo último, y el segundo en representación y como apoderado de la Da. Vicenta González y Alonso, en virtud del poder inserto, ceden y trasmiten á favor de la expresada sociedad "González Méndez y Compañía" representada por sus socios comparecientes, el condominio, participación y cuantos derechos y acciones de todas clases pertenecen proindiviso y pueden corresponder en lo sucesivo en todas y cada una de las pertenencias, bienes y muebles semovientes, inmuebles y derechos reales, personales y de todas clases de la misma sociedad, á sus representadas las referidas Da. Carmen González Resto y Doña Vicenta González y Alonso, como hija y madre respectivamente y herederas del finado Don Domingo González y González gestor de dicha sociedad, subrogando á ésta en el mismo lugar, grado y derechos de las cedentes por el convenido precio de *veinte y cuatro mil pesos* moneda especial nacional, valor efectivo que de mútuo acuerdo con los otros socios, fijan como justo precio y á que asimismo calculan podría quedar reducido el total haber ó participación del socio fallecido Señor González en dicha sociedad, después de la liquidación de ésta, cuya suma ó precio confiesan los mencionados Doña Petrona y Don Manuel Lomba en este acto, en mi presencia y de los testigos, haber recibido la mitad cada uno á su entera satisfacción con las representaciones dichas y antes de ahora, de

la sociedad adquirente, á favor de quien por el expresado concepto y cantidad dicha, esto es, doce mil pesos cada uno, otorgan con las representaciones expresadas la más eficaz y solemne carta de pago mediante esta escritura.

*Segunda.*—Los cedentes obligan á sus representados á responder de la legitimidad de los derechos que ceden y de la personalidad con que efectuan la cesión, así como el saneamiento con arreglo á derecho: la sociedad adquirante entrarrá en posesión y se considerará única dueña de los derechos y bienes que adquiere, desde hoy y sin necesidad de otro acto que este otorgamiento, aclarando los comparecientes que en virtud de lo expresamente pactado, habrán de considerarse conmprendidos en la cesión objeto de la cláusula anterior, el condominio y participación que al causante Don Domingo González pertenecía proindiviso como tal socio sobre todos los inmuebles y derechos reales que en la actualidad pertenecen á la expresada sociedad, tal y como resultan descritos en los correspondientes títulos de adquisición que se presentarán en el Registro de la Propiedad del Distrito, juntamente con el testamento del causante Señor González y la copia de esta escritura para las inscripciones correspondientes.

*Tercera.*—Que al convenir la cesión consignada en la cláusula 2a. ha sido pactado entre los comparecientes que la repetida sociedad queda obligada á pagar el legado de mil pesos que el causante Don Domingo González hizo por la cláusula quinta de su testamento á la menor Leonor Martínez hija natural de Juana Martínez, así como las rentas fijadas para dicho legado, á cuyo pago se obliga la expresada sociedad en la forma y términos ordenados en el citado testamento: y que se consideran comprendidas también en la cesión el importe de las veinte y cinco acciones del Banco Territoiral y Agrícola de Puerto Rico que pasan á ser de la exclusiva propiedad de la sociedad cesionaria "González Mendez y Compañía", pertenecían al causante Señor González y figuran con el número dos en el inventario general que de los bienes que constituyen la herencia dejada por el Don Domingo González se formó por sus albaceas con fecha veinte y ocho de Junio del noventa y cinco, para pagar los derechos reales devengados á favor de la Hacienda en la trasmisión de la expresada herencia, como efectivamente se pagaron mediante la oportuna liquidación provisional de fecha veinte y ocho de Junio del noventa y cinco, cuya liquidación provisional es voluntad de los interesados se declare y considere como definitivamente hecha, toda vez que lejos de aumentar el capital de treinta y ocho mil no-

vecientos cincuenta pesos en ella declarado, ha quedado reducido dicho capital á la suma de veinte y cuatro mil pesos, como así resulta de la cláusula primera de esta escritura.

*Cuarta.*—En virtud de la cesión de derechos y acciones á que se contrae la cláusula primera de esta escritura, quedan Doña Carmen González Resto y Da. Vicenta González Alonso, como tales herederas del socio fallecido Señor González, separadas de la referida sociedad "González Méndez y Compañía", y sin derecho alguno en los bienes y pertenencias de ésta.

*Quinta.*—Es voluntad de los comparecientes Don Manuel Méndez, Rodríguez, Don Jacinto Gómez Sierra y Don Manuel García Fernández, los tres por derecho propio y el primero además con la representación que obstenta, que la referida sociedad "González Méndez y Compañía", de la que quedan ahora únicos socios interesados continúe hasen la terminación del plazo señalado en su última prórroga y que desde hoy en adelante se considere modificada la referida sociedad en la forma y términos que se expresan á continuación.—1.—Que el Don Manuel García, de socio industrial que era según la cláusula 2a. de la escritura número ciento ochenta y cinco de fecha veinte y cinco de Agosto del noventa y cuatro antès citada, pasa á ser socio colectivo y gestor con el uso de la firma social, con las mismas facultades consignadas para los otros dos gestores en la cláusula sexta de la escritura número ciento setenta y siete también citada de fecha veinte y uno de Septiembre del noventa y uno, de constitución de la expresada sociedad, y aportando á ésta como capital la suma de seis mil ochenta y cuatro pesos sesenta centavos moneda especial *nacional, que es á lo que asciende el importe de los beneficios que* como socio industrial que era le han correspondido según el último balance general, con sujeción á lo estipulado al ingresar como tal socio industrial.—2.—Que la razón social que ha tenido hasta ahora esta sociedad, se elimine, por no poder continuar figurando en ella, el nombre del socio fallecido Señor González, y se constituya con el del otro socio colectivo gestor Señor Gomez, entendiéndose por tanto que la razón social con que queda, y desde hoy en adelante ha de continuar girando la repetida sociedad, es la de "Gómez Méndez y Compañía."

Por otra escritura posterior de treinta y uno de Enero de mil novecientos fué disuelta y declarada en estado de

liquidación la sociedad mercantil Gómez Méndez y Compañía.

Con tales antecedentes, en veinte y nueve de Enero de mil novecientos uno Doña Petrona del Carmen González Resto, asistida de su esposo Don Pablo Delfín Cuesta, nombrado defensor de la misma, presentó demanda contra todos los otorgantes de la escritura de diez y nueve de Junio de mil ochocientos noventa y seis que ya se dejan relacionados, alegando como hecos que había sido reconocida por Don Domingo González en su testamento cerrado protocolizado el treinta de Marzo de mil ochocientos noventa y cinco como hija natural del mismo, nombrándola heredera de la mitad de todos sus bienes, consistentes en el haber social que como gestor correspondía á aquél en todas las pertenencias de la mercantil González. Méndez y Compañía, del comercio de Yabucoa, constituida por escritura de veintiuno de Septiembre de mil ochocientos noventa y uno, y prorrogada primeramente en nueve de Agosto de mil ochocientos noventa y tres, y después con modificaciones en veinte y cinco de Agosto de mil ochocientos noventa y cuatro; que por la expresada escritura de veintiuno de Septiembre de mil ochocientos noventa y uno Don Domingo González, aportó la cantidad de cuarenta y ocho mil seiscientos veinte pesos ochenta y siete centavos moneda provincial para constitución de la sociedad González Méndez y Compañía; que al practicarse en diez y siete de Julio de mil ochocientos noventa y cinco inventario ó balance de todas las existencias de dicha sociedad resultó un haber líquido de sesenta y siete mil doscientos cincuenta y dos pesos cuarenta y tres centavos de la misma moneda provincial á favor de Don Domingo González; que á pesar de tan positiva y cuantiosa utilidad Da. Petrona Resto y Negrón, madre de la demandante, por escritura otorgada en Yabucoa en diez y nueve de Junio de mil ochocientos noventa y seis vendió todas las acciones dominicales de su hija sobre bienes de toda clase

á favor de los demás socios de la sociedad González Méndez y Ca. por precio mínimo de doce mil pesos provinciales; y que posteriormente fué disuelta la sociedad Gómez méndez y Ca., sucesora de González Méndez y Compañía, por escritura de 31 de Enero de mil novecientos, repartiéndose los socios entre sí el acervo común social, é invocando como fundamentos de derecho los artículos 4 y 164 del Código Civil, y alegando además que la prescripción de acciones no empieza á correr contra los menores, sino desde que arriban á la mayor edad, y que el litigante temerario debe pagar las costas, concluyó con la súplica de que se confiriera traslado de la demanda á Da. Petrona Resto, Don Manuel Méndez Rodríguez, Don Jacinto Gómez Sierra, Don Manuel García Fernández, Da. María Rodríguez López, por su propio derecho y en representación de sus menores hijos Don José Méndez Rodríguez y otro de igual nombre y apellidos, Don Ceferino Mendez Rodríguez, Don Juan y Da. María Méndez Rodríguez y Da. Vicenta González Alonso, y se declarara, por sentencia definitiva, nula y de ningún valor la escritura de modificación de la mercantil González Méndez y Compañía con cesión de acciones y derechos, otorgada por los demandados en diez y nueve de Junio de mil ochocientos noventa y seis, mandando que vuelvan las cosas al mismo ser y estado que tuvieran antes del otorgamiento de dicha escritura, y que con arreglo á derecho se liquide la mercantil existente antes de esa fecha con intervención del representante legítimo de la demandante, como heredera del socio gestor Don Domingo González, cuyo haber líquido se le entregue hecha deducción de las cantidades que hubiere recibido, más los intereses legales de las no percibidas, con las costas del juicio á cargo de los demandados.

A la demanda se acompañaron testimonios de la escritura número 177 de veinte y uno de Setiembre de mil ochocientos noventa y uno sobre constitutción de la socie-

dad mercantil González Méndez y Ca., de la número 69
otorgada en treinta de Marzo de mil ochocientos noventa
y cinco sobre protocolización del testamento cerrado de
Don Domingo González, de la número 118 otorgada en 19
de Junio de mil ochocientos noventa y seis sobre modifi-
cación de González Méndez y Ca., con cesión de derechos
y acciones, y de la número 29 otorgada en treinta y uno de
Enero de mil novecientos sobre disolución y declaración
en estado de liquidación de Gómez Méndez y Ca.; la carta
de 2 de Febrero de mil ochocientos noventa y seis dirigida
á Da. Petrona Resto y suscrita por Don Andrés Antelo;
una certificación de la partida de bautismo de la deman-
dante, cuyo nacimiento ocurrió en cinco de Agosto de mil
ochocientos noventa y dos, y otra certificación de la ins-
cripción del matrimonio de Da. Petrona del Carmen Gon-
zález Resto con Don Pablo Delfín Cuesta y Tolentino,
acto que tuvo lugar en trece de Enero de mil novecientos
uno.

El Letrado Don Antonio Alvarez Nava al contestar la
demanda en representación de Doña Vicenta González
Alonso se opuso á ella y sostuvo el valor legal de la escri-
tura de diez y nueve de Junio de mil ochocientos noven-
ta y seis, cuya nulidad se pretendía, invocando como fun-
damentos de derecho de su oposición los artículos 50 y
234 del Código de Comercio, pues la escritura expresada,
que tenía como consecuencia la liquidación del haber de
un socio en una sociedad mercantil, pudo ser otorgada
por Da. Petrona Resto y Negrón en representación de su
hija, sin necesidad del requisito previo de la autorización
judicial.

El Letrado Don Leoncio García Valle, en nombre de
los Sres. Gómez Méndez y Ca., hizo igual impugnación,
apoyado en los mismos textos legales que la representa-
ción de Da. Vicenta González Alonso, y además alegó la
excepción de prescripción de la acción ejercitada, con
arreglo al artículo 947 del Código de Comercio.

Da. Petrona Resto fué declarada rebelde por auto de veinte y nueve de Marzo de mil novecientos dos, y en su rebeldía se continuó la sustanciación del juicio.

Con las pruebas practicadas se han justificado los hechos fundamentales de la demanda, como también que la mercantil González Méndez y Ca., era dueña de varias fincas rústicas inscritas á su favor en el Registro de la Propiedad de Humacao, que la participación que en dichas fincas correspondía á Don Domingo González fué inscrita igualmente en dicho Registro á favor de Da. Vicenta González Alonso y Da. Carmen González Resto por título de herencia testada, y que á virtud de la escritura de diez y nueve de Junio de mil ochocientos noventa y seis sobre separación de un socio con cesión de derechos y acciones y modificación de sociedad, cuyas cláusulas principales quedan insertas, las fincas inscritas en el Registro á favor de González Méndez y Ca., se inscribieron en el mismo Registro á favor de Gómez Méndez y Compañía.

El Tribunal de Distrito de Humacao con fecha diez y ocho de Abril de mil ochocientos noventa y tres dictó sentencia cuyos fundamentos de derecho y parte dispositiva dicen así:

1o.—*Considerando* que en la escritura otorgada por doña Petrona Resto en representación de su hija menor Da. Petrona del Carmen González se ceden á la Sociedad González Méndez y Ca. los derechos y acciones que por la herencia de Don Domingo González tenía la expresada menor, después de lo que los nuevos adquirentes modifican la constitución de la sociedad González Méndez y Ca., por lo que la escritura abarca dos contratos; uno de cesión de toda clase de bienes muebles, semovientes é inmuebles que procedentes de la sociedad que pertenecían á la menor por herencia paterna, y otro de modificación.

2o.—*Considerando* que el ameritado contrato de cesión no es un acto de comercio, de los comprendidos en el Código Mercantil, ni de naturaleza análoga, como se determina en el artículo segundo de dicho cuerpo legal, por cuanto no revela el propósito de tráfico

y negociación por medio de evoluciones tendentes al lucro que produce el continuado movimiento de la oferta y la demanda comercial.

3o.—*Considerando* que si bien por el artículo 5 del Código de Comercio los menores pueden continuar, por medio de sus guardadores, el comercio de sus padres, el acto de la venta de los bienes comerciales hereditarios es precisamente lo contrario de lo que el expresado artículo prevee pues resulta la descontinuación del ejercicio del comercio que profesaba el padre.

4o.—*Considerando* que aun concediéndole el carácter de mercantil á la repetida cesión, ésta debía regirse por las reglas del derecho común, por no hallarse expresamente establecida otra cosa en el Código Mercantil, según lo preceptúa en su artículo 50.

5o.—*Considerando* que á la expresada escritura de 19 de Junio de 1896 no puede dársele el carácter de escritura de liquidación mercantil, por no amoldarse á lo dispuesto en los artículos 228, 230 y 232 del Código de Comercio.

6o.—*Considerando* que de conformidad con lo dispuesto en el artículo 164 del Código Civil promulgado en 1889, y en el artículo 2010 de la vigente ley de Enjuiciamiento Civil, la madre de la menor no puede enagenar los bienes de su hija sin previa autorización judicial.

7o.—*Considerando* que son nulos los actos ejecutados contra lo previsto en la ley como lo ordena el artículo 4 del Código Civil.

Vistos los artículos 1300, 1301, 1302, 1303, 1304, 1307 y 1308 de dicho Código Civil.

*Fallamos* que debemos declarar y declaramos nula en todo lo que se refiere á la demandante Da. Petrona del Carmen González Resto, la escritura de separación de un socio con cesión de derechos y acciones y modificación de sociedad mercantil otorgada por Don Manuel Méndez Rodríguez por derecho propio y en representación y como apoderado de su madre Da. María Rodríguez López, y hermanos Don Juan y Da. María Méndez Rodríguez, la primera por sí y en representación de sus menores hijos Don Ceferino, Don José y otro Don José Méndez y Rodríguez, Don Jacinto Gómez Sierra y Don Manuel García Fernández, ambos por derecho propio; Da. Petrona Resto y Negrón en representación de su hija menor de edad Da. Carmen González Resto, y Don Manuel Lomba Peña, en representación y como apoderado de Da. Vicenta González y Alonso, ante

el Notario Don Marcelino Estébanez Nanclares, en Yabucoa, el diez y nueve de Junio de mil ochocientos noventa y seis, y en su consecuencia condenamos á los demandados Da. Petrona Resto, Don Manuel Méndez Rodríguez, Don Jacinto Gómez Sierra y Don Manuel García Fernández, Da. María Rodríguez López, por su propio derecho y en representación de sus menores hijos Don José Méndez Rodríguez y otro de igual nombre y apellidos, Don Ceferino Méndez Rodríguez, Don Juan y Da. María Méndez Rodríguez y Da. Vicenta González y Alonso, como legítima madre de Don Domingo González y González, á que vuelvan las cosas al mismo ser y estado que tenían al otorgamiento de dicho instrumento público, y que con arreglo á derecho liquiden la mercantil González Méndez y Ca., existente antes de esa fecha; con la intervención del actual representante Don Pablo Delfín Cuesta y Tolentino de su esposa la menor demandante heredera del socio Don Domingo González y González, cuyo haber le entregarán hecha deducción de las cantidades recibidas por causa del contrato anulado más sus intereses legales, abonándosele la diferencia hasta alcanzar lo que á su haber corresponda más sus intereses legales desde el día del otorgamiento del contrato anulado.—Condenando además á los demandados al pago de las costas de este litigio.''

Contra esa sentencia interpuso la representación de los miembros de la sociedad Gómez Méndez y Ca., ó sea la de todos los demandados con exclusión de Da. Vicenta González Alonso y Da. Petrona Resto, recurso de apelación que les fué admitido, y que después de corridos los trámites legales pende hoy de resolución ante esta Corte Suprema, en la que han llevado la representación de los apelantes el Letrado Don Juan Hernández López, el abogado Don Rafael Tirado Verrier la de Da. Carmen González Resto, y el abogado Don Damián Monserrat la de Da. Vicenta González Alonso.

La cuestión legal á resolver es si la cesión de derechos y acciones de toda clase correspondientes á Da. Petrona González Resto en la sociedad González Méndez y Ca. á virtud de testamento de su difunto padre Don Domingo González, hecha á favor de dicha sociedad sin autorización judicial, por escritura pública de 19 de Junio de

1896, es válida ó nula en ley, pues en el primer caso, válida será también la modificación de dicha sociedad, y en el segundo caso, nula será esa modificación, por descansar en una base ilegal.

El artículo 164 del Código Civil invocado por la parte actora en apoyo de la demanda, dice textualmente así: "El padre, ó la madre en su caso, no podrán enagenar los bienes inmuebles del hijo en que les corresponda el usufructo ó la administración, ni gravarlos, sino por causas justificadas de utilidad ó necesidad, y previa la autorización del Juez del domicilio con audiencia del Ministerio Fiscal, salvas las disposiciones que, en cuanto á los efectos de la transmisión, establece la Ley Hipotecaria"; y el artículo 334 del mismo Código, al definir los bienes inmuebles, hace mención expresa en su número primero de las tierras, y en el número 10 de las servidumbres y demás derechos reales sobre bienes inmuebles.

La entidad jurídica González Méndez y Ca. era dueña indudablemente de bienes inmuebles, pues así se ha justificado por las certificaciones de inscripción de dominio de bienes de esa clase á su favor en el Registro de la Propiedad de Humacao; pero esa no es razón legal para que Don Domingo González, miembro de dicha sociedad, pudiera reputarse condueño de esos mismos bienes, por más que tuviera interés en la sociedad y pudiera trasmitir á otra persona ese interés con el consentimiento de los demás socios, según el artículo 143 del Código de Comercio, doctrina sancionada por el Tribunal Supremo de España en sentencias de 12 de Julio de 1883 y 23 de Febrero de 1884, que por más que sean de fecha anterior á la en que comenzó á regir el Código de Comercio vigente no están en oposición, sino que guardan armonía con los preceptos legales del mismo; y si González no era condueño ó partícipe en el dominio de los bienes de cualquier clase pertenecientes á aquella sociedad, es obvio que no pudo trasmitir ese condominio á su hija natural heredera Da. Petrona

del Carmen González Resto. A la muerte de Don Domingo González, ocurrida en 26 de Marzo de 1895, la sociedad González Méndez y Ca. continuó sin alteración alguna con los herederos de dicho socio Da. Vicenta González y Da. Petrona del Carmen González Resto, con sujeción á lo estipulado en su escritura de constitución, y por tanto todos los bienes que constituían el capital social continuaron obligados á las resultas de las operaciones que se hubieran hecho y se hicieran á nombre y por cuenta de dicha sociedad, sin que pudiera fijarse la participación correspondiente á las herederas del González por estar esa participación sujeta á las contingencias de la liquidación, sin la cual no podría dividirse la masa social. Como tales liquidación y división no llegaron á practicarse, no estaba definido ni determinado con exactitud el haber que en la Sociedad González Méndez y Ca., correspondía á Da. Petrona del Carmen González Resto cuando se otorgó la escritura de 19 de Junio de 1896, y por tanto en esa fecha sólo era dueño de derechos y acciones cuyo importe fijaron ella representada por su madre Da. Petrona Resto y los demás miembros de la sociedad González Méndez y Ca., en la cantidad que estimaron equitativa, atendido el balance anteriormente practicado y teniendo en cuenta la marcha y estado de dicha sociedad. Se realizó, pues, mediante la escritura expresada un contrato de enagenación de derechos y acciones por la representación legal de Da. Petrona del Carmen González Resto y Da. Vicenta González Alonso con los demás miembros de la sociedad González Méndez y Ca., sin que esos derechos y acciones puedan calificarse de dominicales ó reales sobre bienes inmuebles determinados, y por tanto comprendidos en el precepto que entraña el artículo 164 del Código Civil, congruente con el 205 de la Ley Hipotecaria. Es verdad que la Ley de Enjuiciamiento Civil que comenzó á regir en esta Isla en el año de 1886 dice textualmente en su artículo 2010: "Será necesario licencia judicial para ena-

genar ó gravar los bienes de menores ó incapacitados que correspondan á las clases siguientes: 1° Inmuebles.— 2°. Efectos públicos y valores de toda especie, sean al portador ó nominativos.—3°. Derechos de todas clases.— 4°. Alhajas, muebles y objetos preciosos que puedan conservarse sin menoscabar.''—Empero ese precepto, que afectaba en toda su extensión no solo al tutor y curador sino también al padre y á la madre en su caso, quedó circunscrito en cuanto al padre y á la madre, por el art. 164 del Código Civil Español, hecho extensivo á esta Isla por Real Decreto de 31 de Julio de 1899, á determinados bienes, ó sea á los inmuebles, entre los cuales están comprendidos, según se deja expuesto, los derechos reales de cualquier clase que puedan afectarlos, y excluidos por tanto los demás bienes á que se refieren los números 2, 3 y 4 del Artículo 2010 ya citado. Que en el sentido expuesto debe entenderse el artículo 164 del Código Civil, lo convence su mismo texto, que por contener una prohibición no puede interpretarse extensiva sino restrictivamente, con arreglo al precepto de hermenéutica legal ''favorabilia sunt amplianda et odiosa restringenda'', y lo corrobora la otra regla también de interpretación ''inclusio unius est exclusio alterius'', pues habiéndose propuesto el legislador en el capítulo 3 del Título 7 del Libro I del Código Civil determinar los efectos de la patria potestad respecto á los bienes de los hijos, hubiera consignado cuantas limitaciones hubiera tenido por conveniente, y no hubiera establecido únicamente la del artículo 164, cuando pudo reproducir en toda su extensión el Art. 2010 de la Ley de Enjuiciamiento Civil, si hubiera querido hacer extensiva la prohibición de enagenar sin autorización judicial á todos los bienes y derechos que en ese artículo se relacionan. También es de notar que el artículo 317 del Código Civil dice así: ''La emancipación habilita al menor para regir su persona y bienes como si fuera mayor; pero hasta que llegue á la mayor edad, no podrá el eman-

cipado tomar dinero á préstamo, gravar ni vender bienes inmuebles sin el consentimiento de su padre, en defecto de éste sin el de su madre, y por falta de ambos, sin el de un tutor. Tampoco podrá comparecer en juicio sin la asistencia de dichas personas." Ese precepto, como se ve, priva al menor emancipado de la facultad de gravar y vender por sí bienes inmuebles, entre los cuales están comprendidos según se deja expuesto los derechos reales; pero esa prohibición no se hace extensiva á otra clase de bienes, guardando así congruencia este artículo con el 164 en cuanto á los bienes y derechos á que uno y otro se refieren. Y no se diga que el Artículo 164 del Código Civil puede armonizarse con el 2010 de la Ley de Enjuiciamiento Civil antigua, pues el primero impone al padre ó á la madre en su caso la necesidad de obtener autorización judicial para enagenar y gravar los bienes inmuebles del hijo en que les corresponda el usufructo ó la administración, y el segundo impone esa misma necesidad para enagenar y gravar otros bienes además de aquellos. No son harmónicos sino contradictorios los preceptos legales indicados, y por tanto el primero como de fecha posterior deroga el segundo que es de fecha anterior. Contra tal doctrina no es lícito alegar la falta de una declaración expresa del legislador; porque bastaba en todo caso, la derogación contenida en el artículo 1976 del Código Civil, de todos los cuerpos legales que constituyen el derecho civil común en todas las materias que son objeto de aquél, para estimar que el padre ó la madre habían de atenerse á las prescripciones del Código y no á las de la Ley de Enjuiciamiento Civil, para determinar los efectos de la patria potestad respecto á los bienes de los hijos. Entendemos, pues que la escritura de diez y nueve de Junio de mil ochocientos noventa y seis por la que Da. Petrona Resto, como representante de su menor hija Da. Petrona del Carmen González Resto, cedió ó enagenó á la sociedad Mercantil González Méndez y Ca. cuanto le correspondía

ó pudiera corresponderle en dicha sociedad como herede-
ra de Don Domingo González, es válida por no estar com-
prendida dicha enagenación en la prohibición que esta-
blece el artículo 164 del Código Civil, y haber obrado por
tanto Da. Vicenta González con capacidad bastante para
otorgarla, sin que puedan estimarse aplicables al caso,
los artículos 50, 234 y 297 del Código de Comercio, invo-
cados por los demandados que han contestado la deman-
da, pues el acto de cesión ó enagenación verificado por
Da. Petrona González en representación de su hija, no es
mercantil, y tiene por sí mismo una entidad especial pro-
pia ó independiente de la liquidación de la referida so-
ciedad, cuya liquidación consiste en percibir los créditos
de la misma, en extinguir las obligaciones contraídas de
antemano según vayan venciendo, y en realizar las ope-
raciones pendientes, según el Art. 228 del expresado Có-
digo de Comercio. Si fué válida la escritura de 19 de Ju-
nio de mil ochocientos noventa y seis, en cuanto por ella
quedó separada Da. Petrona del Carmen González Resto
al igual que Da. Vicenta González Alonso de la sociedad
Mercantil González Méndez y Ca. por haber trasmitido á
la referida sociedad el interés que en ella tenían usando
del derecho consignado en el Art. 143 del Código de Co-
mercio, válida fué también dicha escritura en la parte re-
lativa á la modificación de la repetida sociedad, pues no
hay razón alguna legal que vicie de nulidad semejante
modificación. Por las razones expuestas entendemos que
debe declararse sin lugar la demanda interpuesta por Da.
Petrona del Carmen González Resto asistida de su esposo
Don Pablo Delfín Cuesta, absolviendo de ella á todos los
demandados y revocando la sentencia apelada con las
costas del juicio y del recurso á cargo de la parte actora.

*Revocada.*

Jueces concurrentes: Sres. Presidente Quiñones, y
Asociado Figueras.

Jueces disidentes: Sres. MacLeary y Wolf.

## OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. MACLEARY.

Considerando que la Sección 164 del Código Civil y 2010 del Código de Enjuiciamiento Civil se encuentran vigentes, y que son compatibles entre sí, no estoy de acuerdo con la apreciación hecha por la mayoría de la Corte en este pleito, no pudiendo por tal motivo estar conforme con la sentencia dictada.

Mi compañero, el Juez Sr. Wolf, ha presentado un analizado voto particular con el que estoy de acuerdo en sus puntos principales. Por esta razón no tengo necesidad de tratar más sobre el particular.

## OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Me veo obligado á disentir de la opinión de la mayoría de la Corte en este pleito. Los hechos y consideraciones han sido perfectamente presentados por el Juez Ponente. No hay duda de que el traspaso ó la tentativa de hacerlo no se hizo de acuerdo con ninguna de las prescripciones del Código de Comercio; en otras palabras, que no se encuentra en el Código justificación alguna para haber hecho la enagenación de los derechos del menor en los bienes de la sociedad González Méndez y Ca. No se llevó á efecto la debida liquidación, según lo expresó la Corte inferior en sus Considerandos 3o., 4o. y 5o., lo mismo que por la opinión de la mayoría.

No se discute que los bienes de la sociedad González Méndez y Ca. consistían principalmente en bienes inmuebles. Se ha alegado, sin embargo, que lo que el menor poseía no era un derecho á propiedad inmueble, sino un interés en la sociedad, y que las prescripciones del artículo 164 del Código Civil son inaplicables. Se ha dicho de igual modo que aunque la sección 2010 del Código de Enjuiciamiento Civil exigía autoridad judicial para

la enagenación de las distintas clases de bienes, la causa de este pleito, sin embargo, con respecto á los padres, la referida sección 2010 fué derogada por haberse puesto en vigor posteriormente el art. 164.

Se puede aceptar que á menos que la una haya sido derogada por la otra, la sentencia de la corte inferior ha debido confirmarse. La opinión de la mayoría de la Corte no descansa sobre ninguna decisión para su argumento principal, y pasa por alto los valiosos comentarios en su contra hechos por los eminentes comentaristas de cada uno de los Códigos, á saber, el Código Civil y el de Enjuiciamiento Civil vigentes en la época del traspaso.

Los principios generales que rigen en la interpretación ó en la derogación de estatutos, tienen por objeto determinar la intención del legislador, y no son esencialmente distintos en los países españoles de lo que son en los Estados Unidos. En cualquiera de los dos cuando se afirma que un estatuto posterior por inducción necesaria deroga al anterior, la corte examinará ambos á fin de determinar que incompatibilidad ó contradicción existe entre ambos. Que la derogación por inducción no está favorecida, se deduce de la experiencia razonada de la humanidad. De modo que tanto puede deducirse del criterio de la opinión de la mayoría, como del de los comentaristas de ambos Códigos, á los que me he referido.

Habiéndose alegado que las prescripciones especiales contenidas en el artículo 164 del Código Civil derogado, con respecto á los padres, las prescripciones generales de los artículos 2010 et seq. del Código de Enjuiciamiento Civil (cuyas secciones por sus términos incluyen á los padres) el principio más aplicable es aquél contenido en la página 743 del Volúmen 26 de la segunda edición de la Enciclopedia Americana é Inglesa de Leyes, á saber: "Una ley general será derogada, por tanto, por otra ley especial subsiguiente cuando las dos no pueden prevale-

cer juntas; pero si al interpretarlas de una manera razonada se ve que no son incompatibles y pueden sostenerse juntas, la ley general no es derogada por la posterior." Verdaderamente que esto no es más que la aplicación particular del principio que rige con respecto á la derogación de estatutos en general.

La Corte Suprema de los Estados Unidos en varias decisiones ha declarado que la verdadera guía es la siguiente: "Para que pueda hacerse la derogación de un estatuto por inducción ó incompatibilidad con otro posterior debe existir una verdadera contradicción entre ambos estatutos de modo que no puedan prevalecer juntos." Arthur v. Hower, 96 U. S. 140 McCool v. Smith 1 Black 459 v. United States, 16 Pet 342, United States v. Tynen, 11 Wall, 88.

Colocando pues estos dos estatutos uno al lado del otro no veo ninguna contradicción entre ellos. Según se ha dicho, las secciones 2010 y siguientes no se refieren únicamente á una clase particular de personas guardianes ó de otra clase, sino que clara y expresamente incluyen á los padres. Estas secciones exigen la autoridad judicial para la enagenación de cuatro clases distintas de bienes, y el artículo 164, que se discute, exige la misma autoridad para la primera de estas clases, haciendo especial referencia á los padres.

Qué contradicción ó incompatibilidad existe de parte del legislador que marca la necesidad de la autorización judicial en caso de cualquiera enagenación particular de propiedad inmueble? El sabio comentarista del Código Civil, Q. Mucius Scévola, precisamente es de parecer contrario al de la mayoría de la Corte. El dice en su comentario sobre la sección 164: "El Código en este artículo al exigir la autorización judicial, habla sólo de los bienes inmuebles pertenecientes á los hijos. El silencio respecto á los demás, ¿quiere decir

que no es necesario tal requisito en cuanto á los mismos ? Así habría que entender tal omisión si no existiese un precepto expreso que la supliera, como es el artículo 2011 de la repetida Ley de Enjuiciamiento Civil, que hace extensiva la necesidad de licencia judicial para la enagenación ó gravámen de los efectos públicos y valores de toda especie nominativos ó al portador, derechos de todas clases, alhajas, muebles y objetos preciosos que puedan conservarse sin menoscabo."

"¿Ha de entenderse que este precepto ha sido derogado porque el Código no haga referencia alguna á él? De ninguna manera. La última es una ley civil y sustantiva, la publicación de la cual puede afectar solamente á las leyes del mismo carácter y no á aquellas de diferente naturaleza, ó sea las leyes adjetivas ó leyes que se refieren á procedimientos tales como la ley de procedimientos. Además la cláusula final derogatoria del Código hace que pierdan su vigencia únicamente aquellas leyes que constituyen el derecho civil común, y esto, en materias que son objeto de la misma, cuya derogación, por lo tanto, no puede referirse á leyes que, como la que estamos tratando, no forma parte del derecho civil común, y menos aún en materias que no son objeto del Código, y que por el contrario vienen á llenar una falta del mismo. Tal como lo entendemos el precepto del artículo 164 no es una modificación de las prescripciones de la Ley de Procedimientos sino una ratificación de ella, pues aunque dicho precepto no estuviere establecido, la autorización judicial sería no obstante necesaria para poder enagenar ó gravar bienes de menores, toda vez que así lo requiere una ley cuyo espíritu no ha sido alterado por la publicación del Código. Como consecuencia de esto, las enagenaciones ó gravámenes de los bienes de menores mencionados deben efectuarse después de haber obtenido la autorización, etc."

Igualmente Manresa en sus comentarios al artículo 2010 y siguientes, dice: *"Bienes de menores sujetos á la patria potestad."* El artículo 164 del Código Civil, dice: (cítese dicho artículo). A este caso son aplicables el presente artículo y los cuatro siguientes en lo que se refieren á los padres. Aunque el Código hace mención solamente de bienes inmuebles, creemos extensiva la necesidad de la autorización judicial á los demás bienes expresados en el presente art. 2011 (2010 en Puerto Rico), como también á la extinción de derechos reales de que habla el 2030 (2029 en Puerto Rico), por ser sus disposiciones complementarias de la del Código, y no haber en éste disposición alguna que lo prohiba.

Sánchez Román, citado más adelante deduce las mismas conclusiones.

Del informe del Registrador de la Propiedad, Andújar, insertado en la resolución de la Dirección General de los Registros Civil y de la Propiedad y del Notariado aparece que él consideró que ambos artículos eran aplicables á la patria potestad, Jurisp. del Código Civil, Tomo 2o. de 1894.

Todas las autoridades consultadas están de acuerdo en que no es necesario obtener autorización judicial para enagenar ó gravar bienes de menores, excepción hecha de los bienes inmuebles. Lo más que puede decirse es que mientras el Código de Enjuiciamiento Civil consideraba meramente formal la autorización judicial el Código Civil en determinados sentidos, la consideró sustancialmente necesaria.

Si entiendo correctamente los razonamientos de la Corte, estoy de acuerdo con ella cuando afirma ó parece afirmar que el Art. 164 en tanto en cuanto contiene una prohibición no debe ser aplicable. No se sostiene que este artículo pueda ser interpretado en el sentido de que prohiba otras enagenaciones de bienes que aquellas com-

prendidas en sus términos. Pero no estoy de acuerdo con que sea aplicable al caso en cuestión la máxima "*expresio unius est exclusio alterius.*" Un caso en que es propia la aplicación de la regla *expresio unius etc.* es el de Wood vs. the United States, citado arriba.

Al tratar de aplicar esta máxima á la derogación de leyes por deducción, parece que debe haber alguna incongruencia ó incompatibilidad entre la cosa incluída y la excluída ó al menos alguna relación entre ellas (distinta de la de *pari materia*) que pudiera ser improbable si no imposible su co-existencia como ley. Debe haber algo que pueda sugerir la intención de derogar. No es suficiente declarar que todas las leyes sobre enagenación de bienes de menores no emancipados están contenidas en determinado capítulo.

Sin embargo, el Ponente afirma que la intención del legislador al poner en vigor el capítulo 3 del Título 7 Libro 1 fué "determinar el efecto de la autoridad paterna con respecto á los bienes de los hijos." Suponiendo que sea este el verdadero sentido de la ley llevaría á uno á serias dificultades, sobre todo si las prescripciones del art. 2010 y siguientes han sido derogadas *pro tanto.* El Captulo 3o. mencionado puede ser más cuidadosamente analizado sin que aparezca concesión alguna que se haga á los padres sobre los bienes de los hijos, aparte de la facultad de administrar y usufructuar y la tácita facultad de enagenar los bienes á que se refiere el art. 164.

Es aquí donde parece que tiene aplicación la máxima *expresio unius etc.* Aquí no hay cuestión alguna de derogación. Dicho Capítulo 3o. expresa el derecho con respecto á los efectos de la patria potestad sobre los bienes de menores. Toda vez que se conceden las facultades de administración y usufructo, las demás relativas al dominio son excluídas, excepción hecha de las referidas en la sección 164. A menos que el Código Civil supla esta

falta, no hay nada en el Código Civil que autorice la Enagenación de propiedad alguna que no esté comprendida en el mencionado art. 164.

Con respecto á este punto citaremos á Sánchez Román Tomo V. Vol. II, 2da Edición, pág. 1149. Al discutir la enagenación de bienes de menores, dice: "En cuanto á la enagenación de bienes inmuebles, aunque el Código no se ocupa más que de la de los inmuebles, no es dudoso considerar subsistente y de aplicación la doctrina del expresado título II, Libro 3o., de la Ley de Enjuiciamiento Civil, y la de los núms. 2 á 4 del art. 2011, en cuanto á los bienes muebles, efectos y valores, derechos y alhajas que deben considerarse sometidos á este procedimiento de autorización judicial para su enagenación en los casos de pertenecer á personas menores de veinte y tres años, cualquiera que sea la situación legal en que se encuentren, de hallarse fuera de la patria potestad ó sometidas á ella; toda vez que la ley no dice más que "menores", y para lo contrario sería preciso que existiera en el Código un artículo que facultara al padre para hacer la enagenación por sí ó mediante otros procedimientos de los que la Ley de Enjuiciamiento Civil tiene establecido en el expresado título; tanto más, cuanto que si el Código ha estimado indispensables las garantías de la justificación de la necesidad y utilidad, autorización judicial y audiencia del Ministerio Fiscal, para la enagenación de bienes inmuebles, no hay razón alguna, antes al contrario, por el valor ni por su importancia, que pueden ser mayores, para que suprima todo género de aquellas en la enagenación de los mismos, y sería muy peligroso y aventurado optar por tal inteligencia, visto el silencio de los textos del Código y olvidando los de la ley de Enjuiciamiento Civil.

Aunque el Código nada diga con respecto á este particular no ha de deducirse por esa razón presunción al-

guna en favor de la patria potestad. La tendencia más universal en todos los países en que se aplica el Derecho Romano ha sido la de limitar la patria potestad, especial·mente con respecto á los bienes de menores. Scévola en su introducción á los Comentarios al Título VII, dice: *"De la patria potestad."*—De la patria potestad, institución jurídica peculiar del derecho romano, sólo se conserva el nombre. Sus cualidades esenciales, sus requisitos característicos han desaparecido; perdidos los unos en el transcurso del tiempo, borrados los otros por el legislador en pugna con las ideas dominantes en la sociedad y época en que vivieron. Vuestro Código refleja esa transformación."

El mejor tratadista sobre la patria potestad puede verse obligado á veces á recurrir al art. 2010 para poder encontrar autorización alguna con respecto á la enagenación de bienes de menores cuando dichos bienes no sean de los comprendidos en los bienes inmuebles.

Si se tiene en cuenta que los verdaderos bienes en cuestión son bienes inmuebles pertenecientes á la sociedad ha de sostenerse completamente la razón para la aplicación de la regla establecida en los artículos 164 y 2010 y siguientes. El demandante pide que vuelvan las cosas al ser y estado que tenían y aunque esto pueda causar trastorno en los asuntos de la sociedad, es una demanda equitativa.

Por las razones expuestas soy de opinión que debe confirmarse la sentencia del Tribunal inferior.